# Wytheville.

## ARCHIE WIDGEON v. COMMONWEALTH.

### June 11, 1925.

Argued before Judge Chichester took his seat.

1. INTOXICATING LIQUORS—*Documentary Evidence—Incriminating Note-book Taken from Accused—Case at Bar.*—In a prosecution for unlaw-fully owning and operating a still the admission in evidence of a notebook taken from the person of the accused was objected to. The notebook contained incriminating entries in regard to barrels,. workings, sugar, meal, yeast, liquor, etc., followed by sums of money. A prohibition officer testified that a complete distillery was found. in close proximity to the home of accused's father, but upon the land of another, and that he saw accused come from an outhouse with something in his hand, which "he looked like he was trying to get rid of, and I said: 'Give me that paper you have in your hand.' He gave me the paper; at least, I took it out of his hand." This. was all the evidence on the point offered by the Commonwealth. There was nothing to indicate that accused was put in fear, or that. an unreasonable search was made of his person.

    *Held:* That the notebook was properly admitted, as the defendant was in no sense compelled to give evidence against himself.

2. SHERIFFS AND CONSTABLES—*Prohibition Officers—Duty to Obtain and Preserve Evidence.*—It is the duty of an officer of the law, not only to give information of violation of any penal statute to the attorney for the Commonwealth, but it is likewise a duty incumbent upon. him to secure and preserve any evidence which tends to throw light upon the commission of the criminal offense.

3. EVIDENCE—*Admissibility—Evidence Illegally Obtained—Illegal Search and Seizure.*—The admissibility of evidence is not affected by the illegality of the means by which it has been obtained, unless it. appear that the defendant has been compelled himself to give or produce it, as where a confession obtained by duress is offered in: evidence; and where evidence is acquired by an illegal search and seizure it cannot be said that the defendant has been himself com-pelled to give or produce it. Where the evidence produced is com-petent and pertinent to the issue, the court will not stop the trial. of a case to investigate the means by which it was procured.

4. INTOXICATING LIQUORS—*Owning and Operating a Still—Corpus Delicti—Objection to the Admission of Notebook—Order of Proof—Case at Bar.*—In the instant case, a prosecution for unlawfully owning and operating a still, defendant objected to the introduction of a notebook, containing incriminating entries, taken from his person, on the ground that at the time the testimony as to the obtaining of the notebook was introduced there was no evidence connecting defendant with the *corpus delicti.*

   *Held:* That there was no merit in this objection, as the body of the crime was the unlawful still and its unlawful operation.

5. EVIDENCE—*Order of Proof—Discretion of Trial Court.*—The order in which evidence is presented in the trial of a case is ordinarily a matter of discretion with the trial court, and this discretion will never be interfered with by the appellate court, except in case of flagrant abuse of the same.

6. INTOXICATING LIQUORS—*Circumstantial Evidence—Notebook Taken from Person of Accused—Link in Chain—Order of Proof—Case at Bar.*—The instant case, a prosecution for owning and operating a still, was purely one of circumstantial evidence. The contents of a notebook, containing incriminating entries, taken from the person of the accused, was a link in the chain by which the Commonwealth sought to connect the defendant with the ownership and operation of the illegal still. While insufficient of itself to convict the defendant of the charge contained in the indictment, it was legal evidence to be considered by the jury along with the other facts and circumstances of the case, and the precise time of introduction was immaterial.

7. INTOXICATING LIQUORS—*Owning and Operating a Still—Evidence—Overalls and Boots on which Fresh Mash was Found.*—In the instant case, a prosecution for owning and operating a still, accused objected to the introduction in evidence of overalls and boots, on which the officers testified fresh mash was found; the same having been taken from a house occupied by defendant. There was a conflict of evidence as to the ownership of these articles.

   *Held:* That it was competent for the Commonwealth to show that these articles were found in a room occupied by defendant, and in close proximity to the place where a still had been illegally operated, as a potent circumstance to connect the defendant with the operation of the still.

8. CIRCUMSTANTIAL EVIDENCE—*Test of Admissibility.*—Much must be left to the discretion of the trial judge, but, where the proper determination of a fact depends upon circumstantial evidence, the safe practical rule to follow is that in no case is evidence to be excluded of facts or circumstances connected with the principal transaction, from which an inference can be reasonably drawn as to the truth of a disputed fact.

9. CIRCUMSTANTIAL EVIDENCE—*Admissibility—Modern Doctrine.*—The modern doctrine in connection with the admissibility of circum-stantial evidence is extremely liberal in the admission of any cir-cumstance which may throw light upon the matter being investi-gated, and while a single circumstance, standing alone, may appear to be entirely immaterial and irrelevant, it frequently happens that the combined force of many concurrent and related circum-stances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion.

10. INTOXICATING LIQUORS—*Operation and Ownership of a Still—Instruc-tions—Possession and Operation of Still on Certain Date.*—In a prose-cution for unlawfully owning and operating a still, instructions which told the jury that it could only find defendant guilty if he operated or possessed the still on a particular date were properly refused, because the accused might have been convicted if he had committed the acts complained of at any time within twelve months prior to the finding of the indictment.

11. INTOXICATING LIQUORS—*Presumption of Innocence—Refusal to Instruct—Case at Bar.*—A defendant is entitled to have the jury told that the law presumes him to be innocent, and that this presumption con-tinues until it is rebutted by the Commonwealth beyond a reasonable doubt. An instruction that where defendant is charged with several offenses accused cannot be convicted of any charge unless the jury is satisfied beyond a reasonable doubt that he is guilty of such charge, does not relieve the court from its duty to instruct that the presumption of innocence attends the accused throughout the whole case.

12. PRESUMPTIONS AND BURDEN OF PROOF—*Presumption of Innocence—Strength of Presumption.*—The presumption of innocence is so strong, that, not only is an accused entitled to the benefit of it, but, if the case be a doubtful one, this presumption is always sufficient to turn the scale in his favor.

Error to a judgment of the Circuit Court of Princess. Anne county.

*Reversed.*

The opinion states the case.

*W. R. Ashburn,* for the plaintiff in error.

*John R. Saunders, Attorney-General, Leon M. Bazile,. Assistant Attorney-General,* and *Lewis H. Machen,. Assistant Attorney-General,* for the Commonwealth.

CAMPBELL, J., delivered the opinion of the court.

The accused was tried and convicted upon an indictment charging him with unlawfully owning and operating a still for the manufacture of ardent spirits. The jury fixed the punishment of the accused at a fine of $75.00 and forty-five days confinement in the county jail.

The motion to set aside the verdict of the jury being overruled, the trial court entered judgment thereon accordingly.

The first error assigned challenges the action of the court in admitting in evidence a notebook taken from the person of the accused, which contained the following entries: "Two barrels, $5.00; one barrel, $2.75; pipes, $5.05; buckets, seventy cents; funnels, twenty cents; cutting, $171.70; sugar, $100.00; meal, $24.00; middlings, $4.00; yeast, $3.00; liquor, thirty gallons, six jugs; liquor, eighty-six; liquor, fifteen, three jugs."

[1, 2] The first objection urged to the admissibility of the evidence is that the evidence was illegally obtained and that its effect was to compel the accused to give evidence against himself. This contention is without merit.

The record discloses, among other things, the following facts:

S. C. Burgess, a prohibition officer, went to the home of the father of the accused to make a search for a still. A complete distilling outfit was found in close proximity to the home, but upon the land of another. The witness, Burgess, testified that he saw the defendant come from an outhouse with something in his hand, which "he looked like he was trying to get rid of, and I said: 'Give me that paper you have in your hand.' He gave me the paper; at least I took it out of his hand."

This is all the evidence on this point offered by the Commonwealth.

There is nothing in the incident to indicate that the accused was put in fear, or that an unreasonable search was made of his person. It is the duty of an officer of the law not only to give information of violation of any penal statute to the attorney for the Commonwealth, but it is likewise a duty incumbent upon him to secure and preserve any evidence which tends to throw light upon the commission of the criminal offense. The defendant was in no sense compelled to give evidence against himself. The most that can be contended is that the person of the defendant was searched without warrant of law, and that the notebook was thus illegally obtained. Be that as it may, it was not error for the trial court to hold that the evidence, to-wit, the book itself, was admissible.

[3] In the recent case of *Gilly Hall* v. *Commonwealth*, 138 Va. 732, 121 S. E. 155, Judge West, speaking for the court, said:

"The admissibility of evidence is not affected by the illegality of the means by which it has been obtained, unless it appear that the defendant has been compelled himself to give or produce it, as where a confession obtained by duress is offered in evidence. And where evidence is acquired by an illegal search and seizure it cannot be said that the defendant has been himself · compelled to give or produce it.

"Where the evidence produced is competent and pertinent to the issue, the court will not stop the trial of a case to investigate the means by which it was procured."

[4, 5] The second ground of objection urged is that "there was no evidence of any sort or kind to connect the defendant with the *corpus delicti*; that is, the owning

and operating of the still discovered by the officers, at the time that the testimony as to the obtaining of the notebook was introduced."

There is no merit in this assignment. The body of the crime was the unlawful still and its unlawful operation. The order in which evidence is presented in the trial of a case is ordinarily a matter of discretion with the trial court, and this discretion will never be interfered with by the appellate court, except in cases of flagrant abuse of the same.

[6] The instant case is purely one of circumstantial evidence. The contents of the notebook was a link in the chain by which the Commonwealth sought to connect the defendant with the ownership and operation of the illegal still. While insufficient of itself to convict the defendant of the charge contained in the indictment, it was legal evidence to be considered by the jury along with the other facts and circumstances of the case, and the precise time of introduction was immaterial.

[7] The second assignment of error relates to the introduction in evidence of overalls and boots, on which the officers testified fresh mash was found; the same having been taken from a house occupied by defendant. There was a conflict of evidence as to the ownership of these articles.

It was competent for the Commonwealth to show that the boots and overalls came from a room occupied by the defendant, and that they had fresh mash upon them. Of course the burden was upon the Commonwealth to connect the accused with the boots and overalls. This it could only do, in the absence of direct proof, by circumstantial evidence. That these articles were found in a room occupied by defendant, and in close proximity to the place where a still had been illegally operated, was a potent circumstance in the efforts

of the Commonwealth to connect the defendant with the operations of the still.

[8, 9] The modern doctrine as to the admissibility of circumstantial evidence is admirably stated by Prentis, J., in *Karnes* v. *Commonwealth*, 125 Va. 758, 99 S. E. 562, 4 A. L. R. 1509, as follows:

"Much must be left to the discretion of the trial judge, but where the proper determination of a fact depends upon circumstantial evidence, the safe, practical rule to follow is that in no case is evidence to be excluded of facts or circumstances connected with the principal transaction, from which an inference can be reasonably drawn as to the truth of a disputed fact. (8 R. C. L., page 180.)

"The modern doctrine in this connection is extremely liberal in the admission of any circumstance which may throw light upon the matter being investigated, and while a single circumstance, standing alone, may appear to be entirely immaterial and irrelevant, it frequently happens that the combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion."

[10] The third assignment of error relates to the refusal of the trial court to give, upon the request of the defendant, the following instructions:

Instruction 2. "The court instructs the jury that as to the charge against the accused of operating a still, the burden is on the Commonwealth to prove beyond every reasonable doubt that the accused operated or assisted in the operation of the still referred to in the evidence in this case, in the manufacture of whiskey on March 3, 1924, and unless the Commonwealth has so proven this they will find the defendant not guilty of this charge.

Instruction 3. "The court instructs the jury that as to the charge against the accused of having in his posses-

sion a still, etc., the burden is on the Commonwealth to prove beyond every reasonable doubt that the still referred to in the evidence was in the exclusive possession of the accused on March 3, 1924, and unless the Commonwealth has so proven this they will find the accused not guilty of this charge.

Instruction 4. "The court instructs the jury that the law presumes the defendant to be innocent until he is proven guilty as charged in the indictment by the Commonwealth, by evidence to moral certainty beyond all reasonable doubt, and to the exclusion of every reasonable theory or hypothesis consistent with his innocence. This presumption of innocence goes with the defendant throughout the whole case and applies at every state thereof, so that unless the jury have an abiding conviction to a moral certainty of the guilt of the accused, they should find him not guilty."

Instruction 2 was erroneous because it limited the jury to finding that the defendant operated and assisted in the operation of a still on a particular date, whereas, the accused might have been convicted if he had committed the acts complained of at any time within twelve months prior to the finding of the indictment.

Instruction 3 was properly refused for the reason that it makes the guilt of the defendant depend upon his exclusive possession of the still on March 3, 1924; whereas, if he had possessed the still at any time within twelve months prior to the finding of the indictment, he could have been convicted.

[11, 12] The contention of the defendant that the court erred in refusing to give instruction 4 is in our opinion well founded. The instruction in the language offered, or else couched in similar language, has become one of the mile posts in criminal law. It expresses the doctrine that the presumption of innocence which at-

taches to the accused throughout the trial of a criminal case, is one of the cardinal defenses upon which he has the right to rely. It is conceded by the Attorney-General that the instruction is unobjectionable both as to form and matter; but it is urged that the jury were fully instructed when the court, on the motion of the defendant, gave the following instruction:

"The court instructs the jury that the accused is here charged with several offenses in one indictment and bill of particulars, and that such charges must be considered separately and the accused should not be convicted of any charge unless the jury is satisfied beyond a reasonable doubt that he is guilty of such charge."

The object of the latter instruction was to call to the attention of the jury that the defendant was "charged with several offenses," and that the jury must consider them separately. It nowhere deals with the presumption of innocence, a presumption so strong that not only is an accused entitled to the benefit of it, but if the case be a doubtful one, this presumption is always sufficient to turn the scale in his favor. *Kibler's Case,* 94 Va. 813, 26 S. E. 858. The defendant was entitled to have the jury told that the law presumed him to be innocent, and that this presumption continues until it is rebutted by the Commonwealth beyond a reasonable doubt. *Barker's Case,* 90 Va. 822, 20 S. E. 776.

The last assignment of error is to the action of the court in refusing to set aside the verdict of the jury because the same is contrary to the evidence. As the case will have to be reversed for the reasons stated, we deem it improper to discuss this last assignment.

The judgment of the trial court will, therefore, be reversed, the verdict of the jury set aside and the case remanded to the circuit court for a new trial.

*Reversed.*

BURKS, J., concurs in result.